UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-00884-WYD

GREG C. TRUITT, JR.

      Plaintiff,

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's application for disability insurance benefits under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433. Plaintiff's application filed in March 2001 was

denied initially (Transcript ["tr."] at 106-09) and after a hearing by Administrative Law

Judge ["ALJ"] E. William Shaffer. *Id.* at 355-67, 31-71. The ALJ found in the decision

dated January 28, 2003, that Plaintiff's left upper extremity disorder was not severe,

that Plaintiff's depression was severe but did not meet a listing, that Plaintiff could

perform work at the medium exertional level, and that he was not disabled because he

could perform his past relevant work as a carpenter and house repairer. *Id.* at 364-67.

On September 9, 2003, the Appeals Council vacated the ALJ's decision and

remanded the case for further proceedings. Tr. at 386-89. The Council stated that the

decision "contains conflicting findings regarding the claimant's physical capacity." *Id.* at 387. More specifically, the ALJ found that the left upper extremity disorder was not severe but also found that Plaintiff was limited to medium work as a result of this impairment. *Id.* The Appeals Council also stated that all of the doctors whose opinions the ALJ discussed "indicated a more restrictive functional capacity than that found" by the ALJ, and that the ALJ "did not provide any explanation for the weight he gave these various opinions." *Id.* Upon remand, the ALJ was directed to "give further consideration to the severity of the claimant's residual functional capacity," to "evaluate the opinion evidence and provide appropriate rationale to explain the weight he gave that evidence" and to obtain evidence from a vocational expert. *Id.* at 388.

Following a supplemental hearing on April 14, 2004 (tr. at 72-104), ALJ Shaffer issued another unfavorable decision on May 4, 2004. That decision found that Plaintiff was not disabled at step two since he did not have any impairments that significantly limited his ability to perform work. *Id.* at 19-29. The ALJ's decision is discussed in more detail in the following section. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. *Id.* at 12-14.

II.   THE ALJ'S DECISION

The ALJ found at step one of the five-step sequential analysis required by law that Plaintiff's earnings from his trade in 2001 and 2002 were just below the level considered to be substantial gainful activity ["SGA"]. Tr. at 23. Accordingly, the ALJ found that Plaintiff has not engaged in SGA since the alleged onset date of disability. *Id.* at 23, 28.

The ALJ then turned to step two, and discussed the medical evidence.  Tr. at 23-28.  He found, giving Plaintiff the benefit of a doubt, that Plaintiff had a "medically determinable impairment of the left arm due to neuropathology, which could reasonably cause the pain symptoms complained of."  *Id.* at 26.  However, he found that Plaintiff's left upper extremity impairment and left arm neuropathology were not severe.  *Id.* at 26-28.  In so finding, the ALJ stated that "there is no credible evidence of even minimal functional limitations due to the claimant's physical condition."  *Id.* at 27.  In making this finding, the ALJ did not explain or attempt to distinguish his earlier decision wherein he found that Plaintiff was limited to medium work as a result of his physical impairments.

Finally, the ALJ found that Plaintiff's mental impairments were not severe.  Tr. at 28.[1]  Accordingly, the ALJ found that Plaintiff was not disabled at step two, as Plaintiff's impairments do not "significantly limit his ability to perform basic work-related activities."  *Id*.  The ALJ did not explain the discrepancy between his initial decision that found Plaintiff was not disabled at step four, and his second decision wherein he found Plaintiff was not disabled at step two.

III.   ANALYSIS

1.   Whether the ALJ's Finding of Non-Severity Regarding Plaintiff's Left Arm Neuropathology is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in finding at step two that his left arm neuropathology was not severe and that it does not "even minimally impair his ability to engage in basic work activities."  *See* Tr. at 27.  I agree for the reasons stated below.

---

[1]  This also was contrary to the initial decision that found severe mental impairments.

I first note that there is a glaring conflict between the ALJ's two decisions which is not adequately explained by the record.  In the first decision, the ALJ found that Plaintiff's left upper extremity disorder was not severe but that Plaintiff was limited to work at the medium exertional level based on this impairment.  As the Appeals Council noted in vacating this decision, those are "conflicting findings regarding the claimant's physical capacity."  Tr. at 387.

In the second decision, the ALJ essentially reversed positions without explanation.  More specifically, he found that Plaintiff had a "medically determinable impairment of the left arm due to neuropathology, which could reasonably cause the pain symptoms complained of."  Tr. at 26.  However, he found that Plaintiff's left upper extremity impairment and left arm neuropathology were not severe because "there is no credible evidence of even minimal functional limitations due to the claimant's physical condition." *Id.* at 27.  In making this finding, the ALJ did not explain or attempt to clarify the disparities between this decision and the earlier decision.

I find error with this.  Several courts have held that principles of finality should apply to findings made by an ALJ.  *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841-43 (6th Cir. 1997); *Lively v. Sec'y of Health and Human Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1987).  While I recognize that the doctrine of res judicata may not technically be applicable to the first decision since it was vacated by the Appeals Council, I am still troubled by the fact that the ALJ discounted findings he made in the first decision and came to an opposite conclusion in the second decision without explanation.  The evidence did not change as to Plaintiff's condition in the time frame

between the two decisions, and there is nothing which supports the ALJ's conclusion that Plaintiff went from being limited to medium work to having no work limitations at all. As noted by the Fourth Circuit, such evidence would arguably be needed "to sustain a finding contrary to the earlier finding." *Lively*, 820 F.2d at 1392. At the very least, the ALJ should have given a cogent explanation as to why he reached a contrary conclusion in the second decision when the evidence remained unchanged so that the Court could determine if this was supported by substantial evidence.

I further find that the ALJ's decision is not supported by substantial evidence even if I disregard the unexplained contradictions between the first and second decisions. The ALJ found that Plaintiff's left upper extremity impairments were not severe because "there is no credible evidence of even minimal functional limitations due to the claimant's physical condition." Tr. at 27. I first note that this conflicts with the Appeals Council's finding in connection with the first decision that all of the doctors whose opinions the ALJ noted "indicated a more restrictive functional capacity than that found" by the ALJ. *Id.* at 387. In other words, the Appeals Council correctly noted that many of the doctors' opinions discussed by the ALJ found that Plaintiff had a more restrictive functional capacity than medium work.

More importantly, I find that the reasons the ALJ gave for this finding and his decision to find Plaintiff's left arm impairment not severe are unsupported by the record. The medical evidence supports the fact that Plaintiff had left upper extremity problems, including left arm neuropathy. *See* Tr. at 304 (consulting examiner Dr. Van De Graaff's diagnosis of "[n]europathy in the left arm involving his median nerve"), 234 (treating

physician Dr. Hall's diagnosis of "probable median neuritis due to local trauma").  While the ALJ appeared to discount this evidence, as explained below, he did ultimately find that "the claimant has a medically determinable impairment of the left arm due to neuropathology, which could reasonably cause the pain symptoms complained of."  *Id.* at 26.

The record further supports the fact that Plaintiff's impairments from his left arm limit his ability to work.  This was noted by the Appeals Council, and is supported by the record.  For example, in 2002 Dr. Van De Graaff limited Plaintiff to lifting no more than 20 pounds frequently and 30 pounds occasionally, and imposed manipulative limitations.  Tr. at 304-05.  A functional capacity evaluation in 2003 limited Plaintiff to light work (*id.* at 323), as did treating physician Dr. Hall in 1999.  *Id.* at 193. Dr. Gulevich found in 1996 that Plaintiff could not perform medium or harder work more than four hours per day and was limited to light or sedentary work the other four hours. *Id.* at 230.

The ALJ chose in the second decision not to find this evidence credible.  I find that this is not supported by substantial evidence.  I first address Dr. Van De Graaff's consultative examination of August 10, 2002.  Tr. at 25-26.  That physician found that Plaintiff had "a positive Tinel's and a positive Phalen's sign on his left hand with mild tenderness to palpation on the left medial arm, just medial to the head of the biceps." *Id.* at 304.[2]  As noted earlier, he diagnosed neuropathy in the left arm involving

---

[2]  Tinel's sign is defined in part as "an indication of irritability of a nerve resulting in a distal tingling sensation on percussion of a damaged nerve."  *Mosby's Medical Dictionary*, 6th ed. 2002, p. 1717.  Phalen's sign is another test conducted to determine neurovascular damage.  *The Merck Manual*,

Plaintiff's median nerve.  *Id.*  He further assessed significant functional limitations, limiting Plaintiff to lifting and carrying about 20 pounds frequently and 30 pounds occasionally[3], and imposed "manipulative limitations in doing repetitive reaching, handling, feeling and grasping with the left arm."  *Id.* at 304-05.

The ALJ stated that he did not give significant weight to Dr. Van De Graaff's findings.  In doing so, the ALJ improperly made speculative inferences about the evidence and substituted his judgment for that of the doctor.  Specifically, the ALJ found that Dr. Van De Graaff "appears skeptical whether th[e] positive Tinel's and Phalen's signs demonstrate the existence of a medically determinable impairment."  Tr. at 26.  This is simply not supported by the record, as there is no indication in the doctor's report that he was skeptical about his objective findings or the diagnosis. Accordingly, I find clear error with this finding.  *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*'") (emphasis in original) (quotation omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996).

---

17th ed. 1999, pp. 491-492.  *See* Tr. at 374.

[3]  This falls between medium and light work and would thus preclude medium work.  *See* 20 C.F.R. § 404.1567(b) and (c) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds. . . . "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects up to 25 pounds".)

The ALJ further improperly found that there is a "question" whether the positive Tinel's and Phalen's signs on Plaintiff's left hand "demonstrate[] the existence of a medically determinable impairment, as required by SSR 96-4p." Tr. at 26.  The ALJ expounded on this issue at the hearing, stating:

> And I recognize that there have been limitations that have been placed on Mr. Truitt by treating and examining physicians that are less than a medium exertional level.  And the limitations such that if taken and proceed from that basis, probably would provide a basis for a grid application.  But I can't find a way around the Social Security ruling 96-4 which talks about pain, and that a symptom not being a medically-determinable physical or mental impairment .  And with that in mind, I'm thrown into the same dilemma that I was at the last hearing, and that is, what's the medically determinable impairment that's established by the physical findings and diagnosis in the file?  And on both occasions I've had two medical experts at two different hearings come to the same conclusion. . . . Which draws a conclusion of non-severe.  And so I have a dilemma, as you can see.  I don't doubt what you've said in your argument, and I don't doubt that Mr. Truitt has some pain and limitation in the upper left extremity, but I'm constrained by 96-4.

*Id*. at 98-99.

I find error with this analysis as it applies to Dr. Van De Graaff's findings.  The regulation relied on by the ALJ provides that "[a] symptom is not a 'medically determinable physical or mental impairment' and "no symptom by itself can establish the existence of such an impairment."  SSR 96-4p, 1996 WL 374187, at *1 (1996).  The regulation further states that "[a]n impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically accepted clinical and laboratory diagnostic techniques."  *Id*.  In other words, the impairments must be shown by "objective medical abnormalities, *i.e.*, medical signs and laboratory findings."  *Id*.

In this case, Plaintiff's impairment was documented by objective medical signs and findings of Dr. Van De Graaff, as discussed above.  These objective findings resulted in a diagnosis of an impairment—neuropathy.  Neuropathy has been defined as "an abnormal and usually degenerative state of the nervous system or nerve.  Merriam-Webster Online Dictionary.[4]  These findings and the diagnosis did not relate simply to pain, as the ALJ implies, but supported the finding of a physical impairment based on a disease of the nervous system or nerves.  The ALJ erred in not recognizing this, and thus erred in relying on SSR 96-4p.

The ALJ also appeared to reject Dr. Van De Graaff's findings on the basis that he opined that the neuropathy "does seem to bother him, but does not seem to be significantly debilitating to him.  Tr. at 26, 304.  However, this was improper as the doctor went on to diagnose specific functional limitations.  *Id.* at 304-05.  In other words, the ALJ was not entitled to rely on a vague statement about the neuropathy not being "significantly debilitating" when the doctor went on to clearly define the limitations he felt Plaintiff had from his impairment.  At the very least, if the ALJ thought that the statement was inconsistent with Dr. Van De Graaff's findings, the ALJ had a duty to contact the doctor to have the discrepancy explained.  See *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).  The ALJ erred in not doing this.

Finally, the ALJ did not give significant weight (or indeed any weight it appears) to Dr. Van De Graaff's functional assessments.  He first found that the doctor "appears to give undue weight to the claimant's statements about this pain, which I do not find

---

[4] *See* www.m-w.com/dictionary/neuropathy.

-9-

reliable." This is not supported as there is no indication that Dr. Van De Graaff gave any weight to Plaintiff's statements. Instead, the functional assessment appears to be based on objective findings by which the doctor diagnosed neuropathy. The ALJ also rejected the functional assessment because he stated it was "inconsistent" to find Plaintiff capable of lifting 30 pounds occasionally but 20 pounds frequently. However, the ALJ failed to state why this finding was "inconsistent", and it appears that this finding was consistent with assessments of other practitioners that limited Plaintiff to light work or medium work, as detailed earlier. Finally, the ALJ noted that the doctor did not state how much Plaintiff was limited in connection with his manipulative restrictions. This is also error as Dr. Van De Graaff clearly stated that Plaintiff could "occasionally" reach, handle and finger. Tr. at 305.

I also note that the ALJ ignored or improperly discounted the substantial other evidence in the record that supported Dr. Van De Graaff's findings. As stated previously, treating physician Dr. Hall diagnosed "probable median neuritis due to local trauma", and limited Plaintiff to light work. Tr. at 193, 234. The ALJ appeared to discount Dr. Hall's findings on the basis that "this was purely based on the claimant's history, as the doctor specifically stated that he did not do a physical examination." *Id.* at 24. In making this finding, the ALJ ignored the fact that Dr. Hall's report stated that he did not do a physical exam because this was already a well documented issue and he did not think he was going to unearth anything that changed his opinion. *Id.* at 233. Further, an ALJ is not entitled to discount a diagnosis of a physician simply because it may have been based on a patient's history or subjective complaints. Indeed, the

-10-

practice of medicine depends, at least in part, upon this type of history.  This is an improper substitution of the ALJ's medical judgment for that of the doctor's.  *See Thomas v. Barnhart*, No. 04-7141, 2005 WL 2114163, at *4 (10th Cir. 2005).

Dr. Gulevich's findings in 1996 from an independent medical examination also support Dr. Van De Graaff's opinion.  Dr. Gulevich found that "Tinel's is present at the left wrist but not at the right" and "bilaterally at the shoulders", and stated that he "identified other examination findings which would explain his pain."  Tr. at 229.  He also limited Plaintiff to light or sedentary work for half the day.  *Id.*  The ALJ chose to interpret Dr. Gulevich's identification of positive Tinel's and Phalen's sign at the left wrist and bilaterally at the shoulders as indicating that "the doctor felt that the claimant was showing false positive signs that did not justify a valid diagnosis of nerve pathology."  *Id.* at 26.  The ALJ also stated that these positive signs "were not convincing to the examining doctor in absence of pain involvement on the right side . . . and in absence of positive EMG."  *Id.*  Again, this is blatant speculation that is not substantiated in any manner in Dr. Gulevich's report or by other medical evidence.  Accordingly, these findings are not supported by substantial evidence.[5]

There was also substantial other evidence in the record that supported Dr. Van De Graaff's findings, which the ALJ ignored.  This includes the functional capacity evaluation in 2003 that limited Plaintiff to light work (tr. at 379), treating

---

[5]   The ALJ also omitted mention of Dr. Gulevich's other objective findings that supported his diagnosis; namely, the finding that on palpation, Plaintiff had "tenderness on the left forearm extensor and in the left lateral epicondyle" with "mild to moderate diffuse tenderness in the left arm musculature between elbow and shoulder."  Tr. at 228-29.

physician Dr. McNamara's finding that Plaintiff was limited to lifting no more than 20-30 pounds frequently or continuously lifting 8-12 pounds (*id.* at 209), neurologist Dr. Sternberg's finding of "neuropathic pain related to injury of either the ulnar or radial nerve" for which the doctor believed there would be no spontaneous remission or cure (*id.* at 323), and Dr. Burkley's diagnosis of chronic pain syndrome, left arm (*id.* at 257).[6]

The Commissioner argues that evidence prior to the onset date, including that of Drs. Hall, Gulevich and McNamara, is not relevant since Plaintiff's onset date is alleged to be January 1, 2001.  However, the ALJ cited to evidence prior to the onset date to support his decision.  Tr. at 24.  Having chosen to rely on such evidence, the ALJ cannot selectively apply the evidence that supports his decision while ignoring the evidence that favors a finding of disability.  *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 n. 2 *(10th Cir. 2004).  Further, that evidence appears to have been appropriately considered as Plaintiff reached maximum medical improvement as of 1995.  Tr. at 209, 230.

The ALJ also discussed and appeared to rely on a consultative evaluation of Dr. Moran dated August 4, 2001.  Tr. at 24- 25, 27.  Dr. Moran diagnosed neuoropathic left arm pain and left leg and foot pain.  *Id.* at 253.  He stated that Plaintiff's physical

─────────────────────

[6]  The chiropractor's reports are also supportive of Plaintiff's complaints, as are the physical therapist's records.  While the ALJ correctly stated that these practitioners are not acceptable medical sources, he went on to recognize that they are "sources indicating the claimant's allegations and statements of symptoms."  Tr. at 24.  However, he then appeared to completely discount these sources, when they were supportive of Dr. Van De Graaff's and other treating physicians' findings.  This was error.  *See* 20 C.F.R. § 404.1513(d) (while a chiropractor is not an acceptable medical source . . ., his opinions are still relevant "to show the severity of impairment(s) and how it affects [Plaintiff's] ability to work"; *Garcia v. Callahan*, 1997 WL 616150, at *2 (10th Cir. 1997) ( "A chiropractor's opinion may corroborate the findings of a treating physician . . . or show how an impairment affects a claimant's ability to work").

examination was normal, and that as a result he could not see limiting Plaintiff in any way. *Id.* However, he also stated that he could not "comment on [Plaintiff's] neuropathic arm pain or his left leg and foot pain" and that Plaintiff "certainly could have these difficulties without them being apparent on my exam." *Id.* The ALJ ignored these statements, instead selectively applying the portions of Dr. Moran's report that supported his decision. This was error. *Lee*, 2004 WL 2810224, at *3 n. 2.

It is also undisputed that Dr. Moran did not perform the types of tests that were positive by other practitioners, such as Tinel's, Phalen's or other functional testing or palpation tests of Plaintiff's left arm.[7] The ALJ ignored this. Finally, while it appears that the ALJ relied on Dr. Moran's evaluation to substantiate his decision (tr. at 27), the ALJ improperly did not discuss the weight he gave Dr. Moran's findings even though he is required by law to do so and was affirmatively directed to do so by the Appeals Council. *See* Tr. at 388, *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082-83 (10th Cir. 2004)

Finally, the ALJ appeared to rely on the testimony of Dr. Kennedy from the hearing, stating, "[t]he medical expert testified that considering the evidence as a whole, the claimant had no medically determinable impairment and no functional limitations due to the alleged nerve pathology." Tr. at 27.[8] Again, I find that the ALJ's

---

[7] Indeed, within a week of meeting with Dr. Moran, Plaintiff wrote to Social Security and stated, "I don't think the range of (Dr. Moran's] tests addressed the nature of my problem. May I suggest that I undergo a functional capacity evaluation . . . ." Tr. at 175. This letter was not responded to, and a functional capacity evaluation was not set up for Plaintiff.

[8] Dr. Kennedy is a neurologist that was retained by the Commissioner.

-13-

reliance on Dr. Kennedy's testimony is not supported by substantial evidence for several reasons.  First, as with much of the other medical evidence, the ALJ erred by not stating what weight he assigned to Dr. Kennedy's testimony.  *Robinson*, 366 F.3d at 1082.  Indeed, Dr. Kennedy did not examine Plaintiff but only reviewed the medical records.  The ALJ failed to acknowledge that the opinion of a physician who has never seen the claimant is generally entitled to the least weight.  *Valdez v. Barnhart*, No. 01-1531, 2003 WL 366751 at *2 (10th Cir. 2003) (citing 20 C.F.R. § 416.927(d)(1), (2); Soc. Sec. Ruling 96-6p).

As to the merits of Dr. Kennedy's testimony, he opined that Plaintiff did not have functional limitations because "we're dealing with symptoms of pain without documentation of objective anatomical abnormalities either on the exam or on the tests."  Tr. at 77.  This opinion ignored the objective findings made by Dr. Van De Graaff and other physicians that did support such limitations.  The ALJ erred in failing to address this.  Second, Dr. Kennedy opined that the evidence did appear to support Plaintiff's complaints of pain, and that any limitations on Plaintiff's abilities would relate primarily to pain.  Thus, Dr. Kennedy did not dispute that Plaintiff's pain could cause some limitations—he just believed that there was no objective evidence to support those limitations.  As stated earlier, this is incorrect as there is such evidence in the record.  The ALJ ignored the favorable testimony of Dr. Kennedy and improperly relied on his unsupported testimony.  This was error.[9]

---

[9]  I note that the ALJ also relied on an EMG report of February 27, 1996 that was negative, noted that there was no evidence of sensory deficit, and that Plaintiff had been found not to meet the criteria for carpal tunnel syndrome or thoracic outlet syndrome.  Tr. at 24, 26.  However, the fact that

Based on the foregoing, it appears that there is substantial evidence that supports a finding that Plaintiff's left arm impairment is severe within the meaning of the Social Security Act. First, there is evidence of a physical impairment that is shown by objective medical evidence—.the neuropathy diagnosis of Dr. Van De Graaff based on positive Tinel's and Phalen's sign on Plaintiff's left hand and mild tenderness to palpation. This finding was substantiated by treating physician Dr. Hall. The ALJ's decision to discount this evidence is an improper substitution of his medical judgment for that of the physician. *Langley*, 373 F.3d at 1121.

Second, I find substantial evidence that supports a finding that Plaintiff's impairment significantly limited his physical ability to do work. Indeed, just about every treating or examining physician limited Plaintiff to light or medium work. The only exception was Dr. Moran. However, he did not perform functional testing on Plaintiff's left arm, and indicated that Plaintiff's pain may well result in the limitations Plaintiff complains of. Thus, his opinion does not provide substantial support for the ALJ's decision.

In finding Plaintiff's impairment to be severe, I note that the Tenth Circuit has indicated that "[o]nly 'slight' impairments, imposing only a 'minimal effect on an individual's ability to work' are considered 'not severe.'" *Lee*, 2004 WL 2810224, at *1.[10]

---

these findings were negative does not in any way invalidate the objective findings that were positive (such as Tinel's and Phalen's signs).

[10]   In other words, for an impairment to be "not severe" the medical evidence must establish "only a *slight abnormality or combination of abnormalities* which would have *no more than a minimal effect* on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting SSR 85-28, 1985 WL 56856, at *3) (emphasis in original).

Accordingly, "case law prescribes a very limited role for step two analysis." *Id.* at *2. "Step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" *Id.* (quotation omitted). Thus, "[w]hile 'the mere presence of a condition or ailment' is not enough to get the claimant past step two . . . a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id.* (quotations omitted); *see also* SSR 96-3p. Here, Plaintiff certainly made more than a de minimus showing of impairment, and the ALJ erred in not recognizing this.

Based on the foregoing, I find that the ALJ erred at step two of the analysis. The finding that Plaintiff's left arm impairment is not severe is not supported by substantial evidence. Instead, substantial evidence supports a finding that Plaintiff's left arm impairments are severe.

2.     Whether the ALJ Erred By Not Assessing the Impact of Plaintiff's Pain on His Level of Functioning

I further find error with the ALJ's assessment of Plaintiff's pain, which also impacts the ALJ's findings as to Plaintiff's credibility. Almost all of the medical evidence of record substantiates Plaintiff's pain. Indeed, the Commissioner's own medical expert indicated that the evidence appeared to support Plaintiff's complaints of pain. Tr. at 77. Further, there is objective evidence of a pain-producing impairment—neuropathy. Thus, the ALJ was required to consider whether Plaintiff's pain is disabling. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992).

In doing so, the ALJ was required to consider all of the relevant evidence in determining whether Plaintiff was disabled by pain. *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). This includes the medical evidence, subjective accounts of the severity of pain, "a claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed,. . . regular contact with a doctor, . . . the possibility that psychological disorders combine with physical problems. . . the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Id.* at 165-66; *see also Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993). Further, once the ALJ determined that Plaintiff's impairment could reasonably produce the symptoms complained of, the ALJ was required to evaluate the effect of the symptoms to determine the extent to which they affect basic work activities. SSR 96-7p.

I find that the ALJ did not conduct a proper analysis of this issue. He did not discuss many of the above factors, including Plaintiff's persistent attempts to find relief for his pain through chiropractors, massage therapists, etc. (tr. at 237-48, 415-70, 472-525), or the effect of the pain medication Neurontin he was prescribed. Indeed, neurologist Dr. Sternberg indicated that there were be no remission or cure for Plaintiff's left arm impairment and to continue to take Neurontin. *Id.* at 323. The ALJ also ignored the evidence that the side effects of the drug have prevented Plaintiff from taking higher (and more effective) dosages. *Id.* at 103.

The ALJ's pain assessment also improperly discounted all the medical evidence that substantiated the pain and its impact on Plaintiff's ability to work. In so doing, the

-17-

ALJ found, without any support from the record, that Plaintiff's "statement and allegations of pain including those made to the various doctors, and his presentation during examination are inconsistent with the objective medical evidence." Tr. at 25. However, there is objective medical evidence that supports the findings of pain, as noted in the previous section. Further, even those doctors that the ALJ relied on to support his decision—Drs. Moran and Kennedy—substantiated Plaintiff's complaints of pain.

In finding Plaintiff's complaints of pain not credible, the ALJ also relied on the fact that Plaintiff was able to work part time and a psychologist indicated that Plaintiff seemed to show less than his best effort. Tr. at 24. These are not proper grounds to discount the medical evidence and opinions of the doctors in this case. They are also not proper grounds to discount Plaintiff's subjective complaints of pain.

As to the ability to work part time, this cannot be used as a basis to penalize Plaintiff when it appears that he was attempting to work to his best ability but was unable to perform full time work or substantial gainful activity ["SGA"]. *See, e.g., Pinnt v. Chater*, 988 F. Supp. 1354, 1359 (D. Colo. 1997) (it was inappropriate for the ALJ to penalize a claimant for going back to school and looking for jobs which he later discovered he was unable to perform). Further, the fact that Plaintiff can work part time certainly does not translate to the fact that he can work full time, in light of substantial medical evidence to the contrary. Finally, while the ALJ relied on the fact that Plaintiff performed work above SGA levels prior to 2001 (tr. at 25), this actually supports

Plaintiff's position.  His alleged onset date is January 1, 2001, and thereafter he did not perform SGA.

As to the psychologist's finding that Plaintiff was withholding his best effort (tr. at 310), the ALJ improperly interpreted this as evidence of Plaintiff's "attempt to skew the examination."  This is speculation.  The examiner did not invalidate the results based on this finding and actually noted that Plaintiff was cooperative.  *Id.*  At the very least, the ALJ should have consulted with the examiner to determine if he agreed with the ALJ's interpretation, and his failure to do so is error.  Further, the ALJ ignored the fact that there is no evidence from any other examiner that Plaintiff withheld his best efforts or attempted to skew the examination.  Indeed, consulting examiner Dr. Moran noted that Plaintiff "showed good effort overall" (*id.* at 151) and the functional capacity evaluation in 2003 noted that Plaintiff showed maximum effort.  *Id.* at 379.  This was ignored by the ALJ.  Thus, I find that the ALJ's reasons for finding Plaintiff's allegations of pain not credible are not supported by substantial evidence.

I further note that even if the ALJ finds that a claimant's pain, by itself, is not disabling, "that is not the end of the inquiry."  *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994).  "The [ALJ] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers.*'"  *Id.* (emphasis in original) (quotations omitted).  "A vocational expert is ordinarily required to determine what limitation . . . pain might impose on [Plaintiff's] ability to do . . . work."  *Id.*  I find that the ALJ erred in failing to properly assess this.

3.     Whether the Evidence Directs a Finding of Disability

The final question I must answer is whether to remand this case to the ALJ for further fact finding or whether the record supports a finding of disability as a matter of law.  The Tenth Circuit holds that "'outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose.'" *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quoting *Williams v. Bowen*, 844 F.2d 748, 760 (10th Cir. 1988)).  Thus, reversal and remand for immediate award of benefits is appropriate when "the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied." *Sorenson*, 888 F.2d at 713.

As Plaintiff points out, the grids in this case warrant a finding of disabled if Plaintiff is limited to light work or less.  Plaintiff further argues that the evidence supports a finding that he is limited to light work or less, and that he should be found disabled as a matter of law.  It does appear from my review of the record that the medical evidence strongly supports a finding that Plaintiff is limited to light work.  However, this issue requires weighing of the medical evidence which is a job for the Commissioner, not this Court.  Accordingly, I reject Plaintiff's argument that I should direct a finding of disabled, and instead remand the case to the Commissioner.  At step two, the Commissioner is directed to find that Plaintiff's left arm impairment is severe.  At the remaining steps of the sequential evaluation, the Commissioner is directed to properly weigh the evidence and make findings as to whether Plaintiff is or is not disabled.

IV.     <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

pursuant to 42 U.S.C. § 405(g).

Dated September 13, 2006

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge